UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL FETTERHOFF,                          Case No. 07-15027

            Plaintiff,                       David M. Lawson
vs.                                          United States District Judge

KERNEY, HUTCHINSON,                          Michael Hluchaniuk
FEHENIA, and CORRECTIONAL                    United States Magistrate Judge
MEDICAL SERVICE, INC.,

            Defendants.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 33, 39)**

**I.    PROCEDURAL HISTORY**

In this case, plaintiff seeks money damages for alleged constitutional

violations pursuant to 42 U.S.C. § 1983.  (Dkt. 1).  Plaintiff claims that

defendants, Correctional Medical Services, Inc. (CMS) and three of its employees,

were deliberately indifferent to his serious medical need (Hepatitis C infection),

causing undue suffering and the worsening of his condition.  *Id*.  District Judge

David M. Lawson referred this matter for all pretrial purposes to Magistrate Judge

R. Steven Whalen on December 6, 2007.  (Dkt. 7).  This matter was reassigned to

the undersigned on January 14, 2008.  (Dkt. 11).  Defendants filed a motion for

summary on August 6, 2008. (Dkt. 33). Plaintiff filed a response, a declaration, and a "Motion to Deny or Dismiss the Defendant's Motion for Summary Judgment," which the Court construes as a response to defendants' motion. (Dkt. 38, 39, 40). Defendants filed a reply in support of their motion on September 24, 2008. (Dkt. 41). Plaintiff filed a "rebuttal" to defendants' reply on October 3, 2008. (Dkt. 42).

This matter is now ready for decision and for the reasons set forth below, the undersigned **RECOMMENDS** that the Court **GRANT** defendants' motion for summary judgment and **DISMISS** plaintiff's claims in their entirety.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Complaint

Plaintiff alleges that, while in state custody, in May 2001, he requested treatment for his Hepatitis C virus (HCV) infection. (Dkt. 1). According to plaintiff, he was "informed" that he would not be treated because it was too expensive. Plaintiff does not identify who made this statement. In December 2002, plaintiff was transferred to the South Michigan Correctional Facility and during a routine new arrival health screen, he again requested treatment for his HCV. Plaintiff claims that defendant "Dr. Fehenia," (Dr. Faghihnia) an employee of CMS, told him there was no money in the budget for treatment of HCV.

Plaintiff alleges that he continued to request treatment and that Dr. Faghihnia finally told him in December 2003 that he could receive such treatment. Plaintiff was then referred to Dr. Hutchinson, the "head of infectious disease and internal medicine" for CMS.

In March 2004, plaintiff began a 48 week treatment plan with Interferon and Ribiviron, which continued until February 2005. Plaintiff's viral load was checked on completion of his treatment and the results were "non-traceable." Plaintiff claims that he was told that his viral load screen would be rechecked at two months, six months, and 12 months after treatment. Plaintiff states that in April and October 2005, his viral load screen results were again "untraceable." In December 2005, plaintiff was transferred to Pine River Correctional Facility and requested his 12 month viral screen be scheduled for February 2006. In January, 2006, defendant "Kerney" (Kearney) administered the test but, according to plaintiff, would not give him the results. After filing a grievance, plaintiff was given the results in May 2006 and alleges that Kearney told him that his HCV had returned and he had fallen into a relapse. Plaintiff requested treatment and alleges that Kearney told him that, per policy implemented by Dr. Hutchinson and CMS, further treatment would not be approved. Plaintiff claims that he was told that

nothing more could be done, that further treatment would not be successful, and due to his impending release date, he would not be able to complete a treatment cycle anyway.  In September 2006, plaintiff alleges that Kearney told him that he "may as well forget it, it's not going to happen."  Plaintiff initiated a grievance, which has been denied.  Plaintiff claims that the medical evidence shows that another treatment would "help and may prolong [his] life."

      B.    <u>Defendants' Motion for Summary Judgment</u>

Plaintiff was diagnosed with Hepatitis C following blood tests in either late 2000 or early 2001 while he was incarcerated at the MDOC facility currently known as West Shoreline Correctional Facility (then known as Muskegon Temporary Facility), in Muskegon Heights, Michigan.  (Dkt. 33, p. 1, citing, Exhibit C, pp. 11, 13, and 29).  Plaintiff alleges that the physician assistant (first name "Mary") who was treating him at that time checked into getting Hepatitis C treatment for him at that time but that it was not authorized.  (Dkt. 33, p. 1, citing, Exhibit C, pp. 13-14).  According to plaintiff, the reason treatment was not authorized for him at that point in time was that his viral load was not high enough to meet the criteria for treatment.  (Dkt. 33, p. 1, citing, Exhibit C, pp. 27-29).  Plaintiff admits that he is unaware whether this criteria was a requirement of the

Report and Recommendation<br>Defendants' Motion for Summary Judgment<br><i>Fetterhoff v. Kearney</i>; No. 07-15027

MDOC or CMS.  (Dkt. 33, p. 1, citing, Exhibit C, pp. 28-29).  Plaintiff discussed

his desire for HCV treatment with defendant, Dr. Faghihnia, on April 21, 2003,

who indicated that he could request the treatment. (Dkt. 33, p. 1, citing, Exhibit A,

p. 1010; Exhibit C, p. 14).  Plaintiff then had some testing completed, including

blood work, a liver ultrasound, and a liver biopsy later in 2003.  (Dkt. 33, p. 1,

citing, Exhibit A, pp. 145, 215, 154-55, and 208; Exhibit C, p. 14).

On February 12, 2004, plaintiff had an appointment with Dr. Hutchinson,

who discussed the risks and benefits of treatment with plaintiff and ordered

additional testing, indicating that plaintiff would be cleared for treatment if the test

results were okay.  (Dkt. 33, p. 1, citing, Exhibit A, pp. 204 and 986; Exhibit C, p.

14-15).  Plaintiff began Pegasys and Ribivirin therapy to treat his HCV on March

26, 2004.  (Dkt. 33, p. 2, citing, Exhibit A, pp. 984, 982, 40, and 981; Exhibit C, p.

15).  Plaintiff tolerated the treatment well, despite some side effects of fatigue,

itching, and "stomach problems" such as diarrhea, completing the course of

therapy in February 2005.  (Dkt. 33, p. 2, citing, Exhibit A, 978, 418, 92, 22, 974,

425, 971, 429, 967, 430, 89, 965, 431, 953, 433, 436, 441, 21, 946, 446, 454-56,

457-58, 1115; Exhibit C, p. 15).  As of June 24, 2005, the Hepatitis C virus in

plaintiff was "undetectable."  (Dkt. 33, p. 2, citing, Exhibit A, pp. 38, 32; Exhibit

C, p. 16).  On October 24, 2006, defendant Kearney, advised plaintiff that his

Hepatitis C had relapsed and scheduled a six-month follow-up appointment. (Dkt. 33, p. 2, citing, Exhibit A, pp. 833-34, 25; Exhibit C, pp. 16-17). Plaintiff's April 19, 2007 lab results were within the normal range. (Dkt. 33, p. 2, citing, Exhibit A, pp. 835-36). Plaintiff's October 23, 2007 lab results were again outside of the normal range. (Dkt. 33, p. 2, citing, Exhibit A, pp. 837-38). In November 2007, defendant Kearney, requested an abdominal ultrasound for plaintiff, which was authorized. (Dkt. 33, p. 2, citing, Exhibit A, p. 291-292). The ultrasound was done on December 4, 2004, and the results were normal. (Dkt. 33, p. 2, citing, Exhibit A, p. 55; Exhibit C, p. 18). On December 11, 2007, Dr. Hutchinson, ordered a more sensitive viral test (HCV RNA qualitative) to confirm or rule out a relapse in plaintiff's status. (Dkt. 33, p. 2, citing, Exhibit A, pp. 285-86; Exhibit B). The test was performed on December 12, 2007, and on December 20, 2007, defendant Kearney, advised plaintiff that the results were negative and that his HCV had not actually relapsed. (Dkt. 33, p. 2, citing, Exhibit A, pp. 273, 267; Exhibit C, p. 18). Plaintiff admits that, since December 2007, no one has advised him that he requires further treatment for Hepatitis C. (Dkt. 33, p. 2, citing, Exhibit C, p. 21).

According to defendants, under the foregoing facts, plaintiff cannot satisfy the two part deliberate indifference test under the Eighth Amendment. First, they

argue that plaintiff cannot show that he suffered any physical injury or endured unnecessary pain or suffering due to any of their actions.  Moreover, at the time plaintiff filed his complaint, he had undergone HCV treatment and never had a relapse.  Thus, according to defendants, there is no question of material fact that plaintiff did not have a serious medical need.  Second, defendants argue that plaintiff has no evidence to satisfy the requirement that each defendant was aware of a substantial risk of harm to plaintiff and failed to act accordingly.

With respect to defendant Dr. Faghihnia, she argues that the statute of limitations has expired as to any claims against her because her involvement occurred more than three years before plaintiff filed this complaint.  (Dkt. 33, pp. 8-9).[1]  According to defendant, plaintiff testified that he does not believe that Dr. Faghihnia was deliberately indifferent to his medical needs once he received Hepatitis C medication, which he began on March 26, 2004.  (Dkt. 33, p. 9, citing, Exhibit C, p. 22).  Moreover, defendant Dr. Faghihnia argues that, even if the statute of limitations has not run with respect to the claim against her, plaintiff alleges a mere delay in treatment without proof of further injury, which is

---

[1]  Given the conclusions reached on the merits of plaintiff's claims, the undersigned suggests that the Court need not address defendant's statute of limitations argument.

Report and Recommendation
Defendants' Motion for Summary Judgment
*Fetterhoff v. Kearney*; No. 07-15027

insufficient to establish deliberate indifference.  (Dkt. 33, p. 9, citing, *Napier v. Madison County, Ky.*, 238 F.3d 739, 742-743 (6th Cir. 2001)).

Defendant Hutchinson argues that the claims against him must fail because they are based on an alleged failure to treat plaintiff's "relapse."  (Dkt. 33, pp. 10-11).  First, defendant Hutchinson points out that plaintiff never had a relapse.  (Dkt. 33, p. 11, citing, Exhibit A, pp. 273, 267; Exhibit B; Exhibit C, 18).  Second, plaintiff offers no evidence suggesting that there was any delay by defendant Hutchinson with respect to ordering the more sensitive test, which showed that plaintiff had not relapsed from his HCV treatment.  (Dkt. 33, p. 11, citing, Exhibit C, pp. 23-25).  Third, even if there had been a delay defendant Hutchinson argues that plaintiff's claim must still fail because he suffered no harm as the result of any alleged delay.  (Dkt. 33, p. 11).

Plaintiff claims that defendant Kearney did not treat his "relapse" and that he did not adequately communicate with him regarding his viral chronic care clinics or the status of his Hepatitis C.  Defendant argues that this claim fails because plaintiff never had a relapse.  (Dkt. 33, p. 11, citing, Exhibit A, pp. 273, 267; Exhibit B; Exhibit C, 18).  Defendant argues that this claim also fails because the medical records demonstrate that defendant Kearney regularly saw plaintiff for viral chronic care clinics, monitored his Hepatitis C status through testing, and

Report and Recommendation
Defendants' Motion for Summary Judgment
*Fetterhoff v. Kearney*; No. 07-15027

sought a specialty consultation for him.  (Dkt. 33, p. 11, citing, Exhibit A, pp. 22,

21, 32, 542-44, 27, 580, 587-89, 606-07, 25, 618-20, 323, 273, 247, 291-292).

Accordingly, defendant Kearney provided plaintiff with appropriate medical

treatment and plaintiff's dissatisfaction with the level of communication involved

in his medical treatment is not evidence of deliberate indifference.  (Dkt. 33, p. 11,

citing, *Sanderfer v. Nichols*, 62 F.3d 151,154-155 (6th Cir. 1999)).

Defendant CMS argues that plaintiff's claims against it must fail because it

cannot be vicariously liable under § 1983 and plaintiff fails to connect his alleged

injuries to any policy, practice, or procedure implemented by CMS.  (Dkt. 33, p.

12).  Plaintiff claims that CMS had a policy of denying HCV treatment to infected

inmates whose "viral load" was less than "a thousand" and that this alleged policy

caused him to have delayed medical treatment.  (Dkt. 33, citing, Exhibit C, pp.

27-29).  According to CMS, plaintiff has failed to present any competent evidence

in support of his claims.

C.      Plaintiff's Response

In response to defendants' motion for summary judgment, plaintiff argues

that in 2001 and 2002, his treatment requests were improperly denied by CMS,

and he received treatment only after "two years of systemic denials by CMS."

(Dkt. 39, p. 2).  Plaintiff continues to claim that his "relapse" was "untreated" and

the test results to which defendants now refer are "conveniently negative." (Dkt. 39, p. 6). Plaintiff asserts that he suffers from physical and emotion injuries based on the refusal to treat him in 2001 and 2002 and that an "HCV infection left untreated can be life threatening ... and he was expecting a great deal of pain and suffering in the future." *Id*.

Plaintiff also claims that the delay in treatment caused his condition to "progress damaging over 30% of his liver" and alleges that the "effects of Cirrhosis are irreversible." (Dkt. 39, p. 7, citing liver biopsy results; p. 12). Plaintiff also claims that if defendants had started treatment earlier, he might not have relapsed. (Dkt. 39, p. 7). Plaintiff also offers the opinion of Ben Cecil, M.D. that a second course of HCV treatment is effective in 90% of the relapse cases where the first treatment worked. (Dkt. 39, p. 8, citing, Ex. A, p. 1). Plaintiff also argues that the "record clearly shows the defendant, CMS corporation, had actively done everything it could to discourage, undermine, detour, or circumvent [plaintiff] from getting treatment. (Dkt. 39, p. 15).

D.    Defendant's Reply and Plaintiff's Rebuttal

In reply, defendants emphasize that plaintiff must prove that he suffered injury (i.e., increased morbidity or mortality) as a result of his allegations of deliberate indifference. (Dkt. 41, pp. 1-2, citing, *Napier, supra*). Specifically,

defendants argue that plaintiff must have corroborative medical evidence in the record to demonstrate a detrimental effect.  In this case, according to defendants, the evidence demonstrates that plaintiff received successful treatment for HCV and that he has not relapsed from that treatment.  Defendants suggest that plaintiff has presented no medical evidence to the contrary, and under *Napier*, his claims cannot withstand defendants' motion for summary judgment.

In rebuttal, plaintiff argues that defendants inappropriately rely on *Napier* and asserts that *Blackmore v. Kalamazoo Co.*, 390 F.3d 890 (6th Cir. 2004) provides the correct standard.  (Dkt. 42, pp. 1-2).  As plaintiff explains, the *Blackmore* court held that *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention."  (Dkt. 42, p. 2, quoting, *Blackmore, supra*).  Plaintiff argues that his HCV infection is not a minor malady and the need for medical attention to address it is obvious.  (Dkt. 42, p. 2).  Plaintiff further suggests that even if the Court applies *Napier*, he has submitted corroborating medical evidence in the form of his test results and his liver biopsy.  Plaintiff claims that the results of the biopsy demonstrate that after waiting from May 15, 2001 to October 28, 2003, the HCV infection "actively deteriorated 30% of his liver" and caused "grade III of IV inflammatory changes" of his cirrhosis.  (Dkt.

42, p. 3).  He argues that these losses are irreversible and could have been minimized had defendants acted sooner.  *Id.*

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a

trier of fact to find for the non-moving party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

B.   Deliberate Indifference

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981).  Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs.  *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976).  To succeed on a claim of deliberate

indifference, plaintiff must satisfy two elements, an objective one and a subjective one.  He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

       1.     Serious medical need

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention.  *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988).  An Eighth Amendment claim may be premised on deliberate indifference to exposing an inmate to an unreasonable risk of serious harm in the future.  *Dodson v. Wilkinson*, 2008 WL 5378017, *3 (6th Cir. 2008), citing, *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  *Dodson*, at *4, quoting, *Napier*, 238 F.3d at 742.

Contrary to plaintiff's argument, merely being diagnosed with HCV is not, by itself, a sufficiently serious medical need.  *See e.g.*, *Dodson*, at *5; *Raub v.*

*Correctional Medical Services, Inc.*, 2008 WL 5598325 (E.D. Mich. 2008)

(Prisoner who tested positive for HCV but failed to produce any evidence of need for immediate treatment failed to satisfy "serious medical need" prong of deliberate indifference test.).  As stated in *Monmouth*, a serious medical need is one that has been diagnosed by a physician *as requiring treatment*.  Plaintiff has not offered any medical evidence to suggest that his treatment should have begun earlier than it did.

Moreover, plaintiff's suggested interpretation of *Blackmore* does not obviate the requirement that he come forth with "verifying medical evidence" in order to avoid summary judgment.  As the Sixth Circuit explained in *Blackmore*:

> *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898.  Here, plaintiff's claim is really that his condition was not treated adequately, not that his condition was so "obvious" that someone should have noticed it, but failed to do so.

While plaintiff asserts that he requested and was denied treatment from 2001 through April, 2003, he offers no supporting evidence in the form of

Report and Recommendation
Defendants' Motion for Summary Judgment
*Fetterhoff v. Kearney*; No. 07-15027

grievances filed in or during that time frame, medical records, or kites showing that he requested or required treatment in this time frame. There is no suggestion in plaintiff's medical records that he suffered from ill effects or symptoms of HCV before he began evaluation for treatment in April 2003 or that he required treatment before that time. *See* note 2, *infra*. According to plaintiff's medical records, he requested treatment for his HCV on April 21, 2003. (Dkt. 33, Ex. A, p. 1010). The doctor's notes revealed that such treatment could be requested and another physician would start the process at plaintiff's scheduled appointment later that month. *Id*. On August 19, 2003, plaintiff underwent further evaluation and testing for the HCV treatment. (Dkt. 33, Ex. A, p. 215). On August 29, 2003, plaintiff was approved for a liver ultrasound and biopsy. *Id*. In October 2003, plaintiff underwent a liver ultrasound and biopsy. (Dkt. 33, Ex. A, p. 154). Thereafter, plaintiff's medical records show regular and effective treatment, monitoring, testing, and follow up. (Dkt. 33, Ex. A). The undersigned suggests, therefore, that plaintiff has failed to come forth with any "verifying medical evidence" in accordance with *Blackmore* and *Napier* and cannot satisfy the "serious medical need" to support his delayed treatment claim.

The same standards apply to plaintiff's "relapse" claim.  In this regard,
plaintiff also fails to come forth with any "verifying medical evidence" to support
his claim that he, in fact, had a relapse.  Rather, the medical evidence in the record
shows that a relapse was suspected and that it was later verified through further
testing that no relapse occurred.  Thus, plaintiff has failed to show any "serious
medical need" through his claimed "relapse."

   2. Subjective prong

Even if plaintiff could establish a serious medical need, he has failed to
satisfy the second element of *Wilson*, which requires a showing that defendants
acted with deliberate indifference.  "Deliberate indifference" has been variously
defined by the federal courts that have considered prisoners' Eighth Amendment
claims, but all agree that it is more than mere negligence and less than actual intent
in the form of "malicious" or "sadistic" action.  *Farmer v. Brennan*, 511 U.S. 825,
861 (1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has
been negligent in diagnosing or treating a medical condition does not state a valid
claim under the Eighth Amendment; "medical malpractice does not become a
constitutional violation merely because the victim is a prisoner"); *Sanderfer v.
Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent

of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d at 595 n. 2. A delay in access to medical attention, however, can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994), quoting, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (*per curiam*), cert. denied, 496 U.S. 928 (1990). Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976).

Plaintiff has not even come forth with sufficient evidence for a medical malpractice claim, which, in any event, would not take on constitutional

Report and Recommendation
Defendants' Motion for Summary Judgment
*Fetterhoff v. Kearney*; No. 07-15027

proportions simply because plaintiff is incarcerated.  *See Estelle*, 429 U.S. at 105-06; *Westlake v. Lucas*, 537 F.2d at 860 n. 5.  As many courts have acknowledged, HCV does not require treatment in all cases.  *Hix v. Tennessee Dept' of Corrections*, 196 Fed.Appx. 350, 357, n. 1 (6th Cir. 2006).[2]  In reality, plaintiff's claim and evidence establish nothing more than a mere difference of opinion with the medical providers' assessment and prescribed treatment.  *See Thomas v. Coble*, 55 Fed.Appx. 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat [Plaintiff's] pain. However, this difference of opinion does not support an Eighth Amendment claim.").  In this case, plaintiff offers no evidence that he required any treatment before 2003, or that he "relapsed" and defendants failed to provide adequate treatment.  Under these circumstances, plaintiff cannot establish that any of the defendants were deliberately indifferent to a serious risk of harm.

---

[2] *See e.g.*, *Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005) ("New York State Department of Corrections [ ] policy generally forbids the prescription of hepatitis C medication to any prisoner with evidence of active substance abuse within the preceding two years."); *Iseley v. Dragovich*, 90 Fed.Appx. 577, 581 (3d Cir. 2004) ("Interferon treatment was contraindicated in [plaintiff's] case because his condition had not yet progressed to the point where such treatment would have been appropriate."); *Edmonds v. Robbins*, 67 Fed.Appx. 872, 873 (6th Cir. 2003) ("[T]he medical literature which [plaintiff] filed with the court also establishes that medication is not always required for the treatment of hepatitis C.").

    3.     Policy claim

Plaintiff claims that he requested treatment in 2001 and that treatment was denied by CMS staff because "CMS would not; either, authorize treatment because his viral load was insufficient, and even if it was sufficient; CMS corporation does not budget for the treatment of HCV." (Dkt. 39, p. 1). According to CMS, plaintiff has failed to present evidence that this was, in fact the policy of CMS or that this policy was applied to him and caused him harm. A claim under § 1983 cannot be based on a theory of respondeat superior or vicarious liability. *Moore v. Michigan Dep't of Corrections*, 2007 WL 3124649, *4 (W.D. Mich. 2007), citing, *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 (1978). Rather, under *Monell*, liability against an entity or an agent in his official capacity can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice. *Raub v. Correctional Medical Services*, 2008 WL 160611, *2 (E.D. Mich. 2008), citing, *Monell*, at 694. Moreover, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Raub*, 2008 WL 160611, at *2, quoting, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). To succeed on a pattern, practice, or policy claim, plaintiff must "identify a policy that is either

unconstitutional on its face or can be proven to have caused a constitutional violation." *Raub v. Correctional Medical Services, Inc.*, 2008 WL 5572634, *3 (E.D. Mich. 2008), citing, *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). Summary judgment is appropriate where a "plaintiff fails to produce any evidence demonstrating that any policy, practice or custom of CMS lead to any deprivation of plaintiff's rights." *Raub*, 2008 WL 160611, at *13. In this case, plaintiff's claim against CMS must fail because he offers no proof that any such policy existed, and more importantly, he offers no proof that such a policy, if it did exist, is unconstitutional on its face or that it caused him harm rising to the level of a constitutional violation. *See also Fitts v. Burt*, 2008 WL 842705, *7 (E.D. Mich. 2008) (plaintiff did not come forth with any evidence "demonstrating a genuine issue of material fact as to whether his injury was the result of an actual policy or custom of CMS.").

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **GRANT** defendants' motion for summary judgment and dismiss plaintiff's claims in their entirety.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any

Report and Recommendation
Defendants' Motion for Summary Judgment
*Fetterhoff v. Kearney*; No. 07-15027

objections are without merit, it may rule without awaiting the response to the

objections.

Date: February 13, 2009                          s/Michael Hluchaniuk
                                                 Michael Hluchaniuk
                                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 13, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Ronald W. Chapman and Brian J. Richtarcik, and I certify that I have mailed by United States Postal Service the foregoing pleading to the plaintiff, a non-ECF participant, at the following address: Michael Fetterhoff, # 238227, PINE RIVER CORRECTIONAL FACILITY, 320 N. Hubbard, St. Louis, MI 48880.

                                                 s/James P. Peltier
                                                 Courtroom Deputy Clerk
                                                 U.S. District Court
                                                 600 Church Street
                                                 Flint, MI 48502
                                                 (810) 341-7850
                                                 pete_peltier@mied.uscourts.gov